The **HOME INDEMNITY COMPANY**, a Corporation of the State of New York, Plaintiff,

v.

**John H. WHITE et al., Defendants.**

Superior Court of Delaware.

New Castle.

March 21, 1969.

F. Alton Tybout, of Tybout & Redfearn, Wilmington, for plaintiff.

John Biggs, III, Arthur G. Connolly, Emmett J. Conte, Jr., Joseph Flanzer, A. James Gallo, James J. Horgan, Harold Leshem, Walter L. Pepperman, William F. Taylor, Wilmington, for the several defendants.

## OPINION

McNEILLY, Judge.

This is an action for a declaratory judgment filed by plaintiff, The Home Indemnity Company, a Corporation of the State of New York, requesting that the Court declare the rights and duties of the respective parties under an insurance contract entered into between John H. White, one of the defendants, and the plaintiff insurance company. The defendants other than Mr. White are parties to this action as a result of an automobile collision which occurred on November 3, 1966 involving a tractor trailer owned by Mr. White and an automobile driven by one Raymond Steele. For some time prior to the automobile collision which precipitated this action Mr. White had dealt with the Saffo Insurance Agency in obtaining his liability insurance on his motor vehicles. The Saffo Insurance Agency wrote his insurance through the plaintiff Insurance Company which I will hereinafter refer to as "Home".

At the time of this action Mr. White's basic employment and occupation was as a messenger with the duPont Company. As a side line, however, he ran a small trucking operation. He owned from time to time one or two vehicles. Before purchasing the vehicle which was involved in the collision precipitating this action he had owned a dump truck which operated with a driver on lease to a local Company.

In July of 1966 Mr. White and an acquaintance, Mr. Desmuk, who is also a defendant in this action, decided that it would be in Mr. White's best interest to buy a truck or tractor which could be used for the purpose of hauling trailers. The plan was that Mr. White would provide a tractor and Mr. Desmuk would take it to a local company called "McCormick", and by prior arrangement McCormick would make payments to Mr. White and Mr. Desmuk for the pulling of McCormick trailers from place to place as requested. Mr. White did purchase the tractor in July of 1966, and insurance pertaining to that vehicle was issued by Home through the Saffo Agency. The circumstances surrounding the issuance of that insurance are in dispute, but in my opinion they are immaterial and need not be resolved in favor of either party. At the time the insurance was issued Mr. White did not own a trailer and did not have any plans for buying one. In late October, however, the McCormick Company informed Mr. White and Mr. Desmuk that it no longer needed Mr. White's tractor to pull its trailers. As a consequence, Mr. White purchased a trailer from a firm in Milford, Delaware. The person who sold that trailer to Mr. White assured him that there would be insurance

on the trailer which would be paid for as a part of Mr. White's regular monthly installments on the payment of the trailer. Mr. White never at any time told the Saffo Agency or plaintiff insurer that he had purchased the trailer since he believed that it was not necessary to do so.

On November 3, 1966 only a few days after the purchase of the trailer the collision occurred while Mr. White's tractor was pulling the trailer which he had purchased from the Milford Company. Home was informed of the accident, filed a S–R–21 Form under the provisions of the Delaware Safety Responsible Law on behalf of Mr. White and began its usual investigation of an accident. The accident was a serious one, and the investigation was of the type carried out generally by the Insurance Company in serious accidents. One of the potential claims was settled and a release was taken in favor of Mr. White and Mr. Desmuk.

On March 6, 1967 Mr. White received a letter from Home denying coverage. Its denial of coverage is the basic subject of this litigation and is located under the part of the policy marked "exclusions". It provides in its pertinent part as follows:

"This policy does not apply: * * *. (c) Under coverages a and b, while the automobile used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company * * *."

Defendants assert coverage under the terms of Mr. White's policy for three basic reasons: The first is that the trailer owned by Mr. White was automatically insured with Home when it was purchased on October 29, 1966 just a few days prior to the collision under the following provision:

(4) "Newly Acquired Automobile—

An automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured, and such spouse on the date of its delivery, and (i. e.) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division one of Coverage if the newly acquired automobile replaces an owned automobile covered by this policy * * *."

Secondly, the defendants contend that the notification given Mr. White, the insured, of non-coverage some four months after the accident was too late.

Thirdly, the defendants claim that because of certain representations made to Mr. White by T. G. Saffo as Agent of plaintiff insurer, to the effect that Mr. White had full coverage, the company should be bound by this meeting of the minds and if necessary the policy should be reformed to include this understanding even if, by chance, it was not included in the policy as written.

What is the meaning of the word "automobile" within the terms of the automatic insurance clause contained in Mr. White's policy and quoted above? Defendants in their brief have failed to cite any case which would include a trailer within the accepted definition of "automobile". It is the opinion of this Court that modern usage assigns to the word "automobile" the restrictive meaning of a motor driven vehicle which is propelled by gas, electricity or other fuel and which is suitable and intended for the conveyance of persons. (See Washington National Insurance Company v. Burke, Ky., 258 S.W.2d 709, 38 A.L.R.2d 861. See also the annotations of the subject of "What is an 'automobile' or a 'car' within coverage of an accident policy." in 38 A.L.R.2d 867 and 74 A.L.R.2d 1264.

Of particular interest in 31 A.L.R.2d 301 is the following:

"In Ferguson v. Provident Life and Accident Co. (1934) 170 Miss. 504, 155 Southern 168, the question whether a trailer was an automobile arose in regard to the use of the term "automobile" in an accident policy. It appeared in this case that the insured was engaged in the business of moving small houses, for which purpose he was using a vehicular contrivance which, for want of a better name, the Court called "a trailer". It consisted of six strong wheels operating upon large axles, and also of such a character that a small house could be loaded on it and moved along a highway by attaching two tractors as the motive power. While operating this contrivance with the house loaded upon it, the insured was run over by the trailer and was killed. The accident policy which the insured was carrying insured against injury "in consequence of being struck, run down or run over by a moving automobile," and the question presented to the Court was whether the contrivance above described was an automobile within the meaning of the policy contract. Holding that it was not, the Court based its decision on the ground that the term "automobile" should be interpreted according to its ordinary acceptation and be understood in its plain, ordinary and popular sense."

It also has been held in Oklahoma that a trailer is not a motor vehicle within the meaning of an Oklahoma Statute providing for substituted service of process on a non resident motorist who uses the highways of the state for the operation of a "motor vehicle". Hayes Freight Lines v. Cheatham, Okl., 277 P.2d 664, 48 A.L.R.2d 1278. It is noted in 12 Couch on insurance, 2d Edition, page 224, Sec. 45, 167 that the word "automobile" has its usual meaning in the policy that it has generally and the term should not be expanded. Also in Kershaw v. Lumbermen's Mutual Casualty Co., 2 Conn.Cir. 164, 196 A.2d 817 (1963)

the Court, in construing the word "automobile" as used in insurance policies, stated:

"The word 'automobile' as used in the exclusion clause cannot be said to be ambiguous. It is a word constantly used in everyday life. It therefore follows where, as in this case, the terms of the insurance policy are clear and unambiguous, it is to be interpreted by the general rules governing the interpretation of any written contract. * * * automobile is defined as a wheeled vehicle propelled by steam, gasoline or electricity and used for the transportation of merchandise or persons. * * *"

■ In my opinion the word "automobile" as it appears in the automatic insurance clause here in question is clear and unambiguous and does not in any sense of the word include "trailer". Nor is there any other provision in the insurance policy which would include trailer under the definition of an automobile.

■ The defendants do not deny the exclusion provision contained in the insurance policy here involved is a uniform clause and a valid one, but they do assert that the notification given the insured of non coverage came "too late". In support of this contention the defendants cite numerous authorities on the general rule that an insurer cannot delay notification of non coverage for such a period of time as to prejudice the insured's rights. That, of course, is not the case in the matter now before the Court. Nothing can be found in the record of this case which would indicate to the Court that the defendants' rights were prejudiced in any way. The defendants other than Mr. White and Mr. Desmuk need not be considered in this instance by reason of their lack of privity to the contractual relationship under the insurance policy. In considering possible prejudice to Mr. White and Mr. Desmuk, however nothing appears in the record except one statement made by Mr. White in which he said that had he been previously

informed of the non coverage he would have employed an Attorney of his own choice to represent his interest. There is no question but that after the accident there was a substantial period of time when the claims' personnel of Home assumed that there was insurance coverage and investigated the accident, settled one claim, and generally handled the file in a routine manner as though there were insurance coverage. An investigation was conducted in the normal course of business. It was recognized that this was a serious accident and the investigation carried on by the plaintiff was commensurate with the accident. One minor bodily injury claim was settled. The question of whether there was coverage was first raised by the plaintiff's regional manager, Mr. Amore, of the New York office. There was some correspondence which took place concerning coverage, but final determination was delayed because of an inability to locate the specific "Daily". There is some dispute between Home and Mr. White as to whether Mr. White had or had not been informed of the question of coverage prior to his formal notice, but in my opinion that dispute is immaterial. Home has indicated a complete willingness to turn over to Mr. White or to anyone on his behalf its complete file, and, in addition, it has even provided legal counsel in connection with the principal litigation. As a result of all this, I can see no showing of prejudice, and, in fact, it appears to this Court that Mr. White and Mr. Desmuk are in no worse position at this time than they would have been had Mr. White been advised immediately of no coverage.

■ Because of representations alleged to have been made by plaintiff's agent that White had full coverage under the policy when his tractor was pulling a trailer should the policy as written before the acquisition of the trailer in question, be reformed under some theory of "estoppel" or "waiver". The answer to this clearly is "No". When the insurance was written White did not own a trailer and had no intention of acquiring one. The conversation had to do with insurance coverage at the time the policy was issued, and there is nothing in the record to indicate in any way that the meeting of the minds included a change in status which was then beyond contemplation. Mr. White was fully covered under the policy for his then intended operation. He received what he bargained for and must be bound by the terms of the policy as written.

For the reasons stated it is my opinion that plaintiff has no duties under its policy of insurance here involved either to White, Desmuk or any other person in connection with the collision of November 3, 1966, and specifically that it has no obligation to defend White or Desmuk in litigation resulting from that collision or to pay any judgment which might result from such litigation.

It is so ordered.