289 A.2d 428.

LEO PATRICK MCGOWAN, *Administrator for the Estate of*
RICHARD B. DUPONT *vs.* CONNECTICUT GENERAL LIFE
INSURANCE COMPANY *et al.*

APRIL 12, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This civil action concerns the terms of an
accident policy issued by Connecticut General Life Insur-
ance Company (the insurer). A jury-waived trial was held
before a justice of the Superior Court. He found that the
plaintiff's intestate's death was within the policy's cover-
age. The essential facts which give rise to this litigation
are undisputed.

During 1966, the insurer issued a group policy covering
the members of the Atlantic Automobile Adventure Club,

Inc. Richard B. Dupont was a member of the club. Membership in the club was restricted to holders of credit cards that are issued by a nationally known distributor of gasoline and other allied automotive products. The club's dues, which included the cost of the insurance, were usually added to the member's monthly bill. The premium charged the deceased amounted to $2.20 a month.

The policy gave a limited type of coverage. It listed a schedule of benefits paid for the accidental loss of life, sight, limbs and fingers provided the loss was the result of the insured's being injured while "boarding, alighting from, traveling in, or upon being struck by a Passenger Conveyance." Benefits were also due if the insured's loss was due to his exposure to the elements "after boarding and by reason of an accident to a Public Conveyance."

On March 30, 1967, Dupont was the operator of a motorcycle that was involved in a collision with a motor vehicle owned by a Rhode Island corporation that specialized in the sale and distribution of building materials. The collision occurred in Seekonk, Massachusetts. The corporation's motor vehicle is a 1964 "GMC" six-wheel, state-body truck.[1] At the time of the collision the truck was returning to Rhode Island after having delivered a load of lumber to a Massachusetts customer. The insured died from injuries he sustained from the collision. If the administrator's suit is successful, the insurer owes the estate $25,000.

The sole and pivotal issue of this appeal is whether the deceased's injuries were caused by a "passenger conveyance," as that term is defined in the policy. The pertinent portion of the policy reads:

> "Passenger Conveyance. The term Passenger Conveyance means a private automobile or a Public Conveyance. The term Public Conveyance means any conveyance licensed for the transportation of passengers or a military air transport plane."

---

[1] The rated weight of the truck when fully loaded was 25,900 pounds.

The administrator contends that the insurer's definition of a "passenger conveyance" is patently ambiguous. He argues that the "GMC" truck can be described as a "private automobile." The insurer, quite understandably, takes a different view of things. It maintains that the vehicle which came in contact with the deceased's motorcycle cannot be classified as a "passenger conveyance."

Although the tragic consequences of the cycle and truck collision are regrettable, this court is still obligated to respect the express terms and conditions of the insurance contract. The policy must be examined in its entirety and the words used must be given their plain everyday meaning. *Factory Mutual Liability Ins. Co.* v. *Cooper,* 106 R. I. 632, 262 A.2d 370 (1970); *Nagy* v. *Lumbermens Mutual Casualty Co.,* 100 R. I. 734, 219 A.2d 396 (1966). In taking an overall view of the policy, equal emphasis must be given to all its relevant parts. A policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context. A court should not, through an effort to seek out ambiguity when there is no ambiguity, make an insurer assume a liabilty not imposed by the policy.

There have been many instances where a variety of vehicles, including trucks, have been held to be an "automobile" with the result that the claim fell within the provisions of the policy. Some courts have said a truck, in the light of the policy's provisions, was a "private motor driven automobile." Such a result was reached because each court, after examining the policy then before it, concluded that the word automobile was being employed in its generic sense, that is, any self-propelled vehicle which is designed to carry people or property over the highway.[2] There are, of course, courts which have ruled that in

---

[2] A collection of such cases can be found in 38 A.L.R.2d 867 (accident policies) and 74 A.L.R.2d 1264 (automobile liability policies).

present times an automobile describes a motor vehicle which is propelled by gasoline, electricity, or other fuel, and is suitable and intended for the conveyance of persons.[3]

Our research has failed to disclose any instance where a court has construed the language found in the clause in dispute. While the generic word, "automobile," is broad enough to include all forms of self-propelled vehicles, the word is to be defined in each instance from its association in the context in which it is used, plus an examination of the construction and use of the vehicle in question. *Kansas Farm Bureau Ins. Co. v. Cool*, 205 Kan. 567, 471 P. 2d 352 (1970). One may not separate "private automobile" from "passenger conveyance." When these two terms are placed in their proper context, it is plain that the insurer was not speaking generically of an automobile. Rather, the combination of "passenger conveyance" with "private automobile" is patently synonymous with or equivalent to the term "private passenger automobile."

The record shows that there is no resemblance between the construction and use of the materialman's truck and that of a private automobile. The truck consisted of a cab and a stakebody bed. The bed measured some 14 feet in length. It was specifically designed for the transportation of cargo such as the load of lumber that had been delivered on the day of the collision. The truck's cab was reserved for the driver and, when necessary, two helpers who could assist him in the loading and unloading of cargo. The registration plates attached to the truck which were issued by the Registry of Motor Vehicles identified it as a commercial vehicle. The truck's owner had issued a directive which expressly prohibited the driver from picking up passengers. The truck was used strictly for business purposes. Its

---

[3]*See Home Indemnity Co.* v. *White*, Del.Super., 252 A.2d 113 (1969); *Washington National Ins. Co.* v. *Burke*, 258 S.W.2d 709 (Ky. 1953).

obvious purpose was the transportation of property, not people.

The trial justice erred[4] when he focused his view on the words "private automobile" and overlooked the words "passenger conveyance." When these words are viewed in their proper context, there is no doubt as to their meaning. There can be no recovery from the defendant insurer for injuries sustained by the deceased in the March 30, 1967 collision.

The defendants' appeal[5] is sustained, the judgment appealed from is vacated and the case is remitted to the Superior Court.

*Goldman, Grady & Biafore, Thomas J. Grady,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley,* for defendants.

---

[4]The trial justice, in adopting the generic definition of an automobile to embrace both trucks and passenger cars, relied on the holdings in *Combined American Ins. Co.* v. *Ganzer,* Tex. Civ. App., 350 S.W.2d 211 (1961) and *National Casualty Co.* v. *Thompson,* 39 Ala. App. 199, 96 So.2d 708 (1957).

In the Texas case, benefits were payable if the insured was killed or injured while driving any "automobile, bus, trolley-bus, taxicab or truck." The insured was killed while driving a self-propelled mobile truck-crane. The insurer appealed claiming that the crane was not a truck. The crane was held to be a truck. Even though the policy provided for injuries incurred while the insured was driving a truck, the court remarked, "In Texas, at least, we think the term 'automobile', which generally means a wheeled vehicle propelled by its own motor for the transportation of persons or property on a street or roadway, includes 'truck.'"

In the Alabama incident, the insured was the operator of a four-wheel forklift truck. He was injured when the forklift fell off a loading platform. The policy covered injuries incurred while driving an "automobile." In speaking of the truck, the court alluded to several definitions which refer to an automobile in its generic sense. The court ruled that the insurer's choice of the word "automobile" was imprecise. The impreciseness permitted the insured to recover.

[5]While a notice of appeal was filed in behalf of the insurer and the automobile club, the judgment entered was solely against the insurer.