Doris R. HUGHES et al.

v.

AMERICAN UNIVERSAL INSURANCE CO.

No. 79–506–Appeal.

Supreme Court of Rhode Island.

Dec. 23, 1980.

Reargument Denied Jan. 29, 1981.

Almonte, Lisa & Pisano, Stephen C. Mackie, Thomas L. McDonald, Providence, for plaintiffs.

Higgins & Slattery, Robert J. Dumouchel, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is a dispute between an insurer and its insureds who are the plaintiffs, Doris R. Hughes and her husband Francis.[1] The controversy centers on the amount of money due the Hugheses under the medical-payments provision of a so-called Family

---

1. Mrs. Hughes is the named insured, and her husband is also considered an insured because he is a "relative" of the insured under the "non-owned automobile" definition of insured. The automobile in which Mr. Hughes was riding at the time of the mishap was not owned by Mrs. Hughes.

Combination Automobile Policy that apparently was first issued by the insurer to the Hugheses in November 1958 and regularly renewed since that time.

On September 17, 1975, Mr. Hughes received serious injuries when an automobile in which he was a passenger was involved in a collision with an uninsured motor vehicle. He and his wife sought payment of medical expenses that are in excess of $21,000, but the insurer insisted that its liability for the medical expenses incurred by their insureds is limited by the terms of the policy to $500. Both the insureds and the insurer sought to vindicate their respective positions by way of the summary-judgment route. A Superior Court justice, after first finding that the policy was ambiguous, granted the insureds' motion for a summary judgment and denied the insurer's motion.

When the insureds originally purchased their policy, the coverage for medical expenses read as follows:

"Part II—Expenses For Medical Services *Coverage C—Medical Payments*: To pay all reasonable expenses incurred within one year from date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:

"*Division 1.* To or for the named insured and each relative who sustains bodily injury, sickness, or disease, including death resulting therefrom, hereinafter called 'bodily injury', caused by accident * * *.

"*Limit of Liability*: The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident."

The policy's declaration page, which is referred to in the limit-of-liability clause, in its pertinent part states:

"Item 3: The insurance offered is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the

company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Limits of Liability | Premiums |
|---|---|---|
| | | Car 1 |
| * * * | | |
| C. Medical Payments | 500 dollars each person | $4.00 |
| * * *." | | |

Later, on November 11, 1972, the policy was amended by the addition of an endorsement that is identified as form No. 645. The endorsement was entitled "Voluntary No-Fault Loss of Income Endorsement" and provided in pertinent part:

"AMERICAN UNIVERSAL INSURANCE COMPANY VOLUNTARY NO-FAULT LOSS OF INCOME ENDORSEMENT

PART II—EXPENSES FOR MEDICAL SERVICES IS AMENDED TO READ AS FOLLOWS:

PART II—PERSONAL PROTECTION AGAINST MEDICAL EXPENSE AND LOSS OF INCOME TO PAY:

1) MEDICAL EXPENSE BENEFITS

All reasonable expenses resulting from bodily injury, sickness or disease, including death resulting therefrom, caused by accident and incurred within one year from the date of accident, for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, subject to the limits stated below under Limits of Liability.

2) LOSS OF INCOME BENEFITS

Eighty-five (85) percent of loss of income resulting from bodily injury, sickness or disease, caused by accident, for the period of continuous total disability beginning the fifteenth day after the accident and terminating one year and fourteen days from the date of the accident, or at death, whichever occurs first, not in excess of $750.00 per month.

* * * * * *

LIMITS OF LIABILITY: The limit of liability stated in the Declarations un-

der Part II Medical Expense shall be the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains Bodily Injury as the result of any one accident for expenses incurred for services stated in insuring clause, paragraph (1) above. The limit of liability for loss of income shall be $9,000. subject to the limitations stated in the insuring clause paragraph (2) above."

The trial justice in his written decision was of the opinion that the insurer certainly intended to limit its liability under the medical-payment provision to $500 for each person but went on to say, "[T]he test in insurance contract cases is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood them to mean." According to the trial justice, an insured could reasonably have concluded that the insurer agreed to provide unlimited coverage for all reasonable medical expenses incurred within a year subsequent to the collision. Such a conclusion, he indicated, was supported by "the absence of any mention of the five hundred dollar figure on the face of the amendment" and his belief that the limit-of-liability clause was "somewhat ambiguous." We cannot concur in these conclusions.

An insurance policy is a contract, and if its terms are clear and unambiguous, the parties are bound by the agreement. *Factory Mutual Liability Insurance Company of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970). Whenever an insured claims that his or her policy is ambiguous, the policy must be examined in its entirety and the words used must be given their plain everyday meaning. *McGowan v. Connecticut General Life Insurance Co.*, 110 R.I. 17, 289 A.2d 428 (1972); *Nagy v. Lumbermens Mutual Casualty Co.*, 100 R.I. 734, 219 A.2d 396 (1966). The trial justice apparently overlooked the sentiments we expressed in *McGowan*, where we emphasized the necessity of taking an overall view of the policy with equal importance to be accorded all of its relevant parts because ambiguity is not to be established by the viewing of a word in isolation or taking a phrase out of context. 110 R.I. at 19, 289 A.2d at 429.

In taking the overall view of the policy before us, we see that it is true that the endorsement does speak of paying "[a]ll reasonable expenses," but the endorsement also clearly indicates that this obligation is subject to the limitation found in the declaration portion of the policy. When we turn to the declarations page, we read, "C. Medical Payments 500 dollars each person * *." A fair reading of the pertinent policy provisions concerning the payment of the insureds' medical expenses clearly demonstrates that the insurer's liability in this area is limited to $500 for each injured person.

The insureds further contend that the amended endorsement is ambiguous because it fails to refer to the exact language used in the declaration. The endorsement refers to "Declarations under Part II Medical Expenses," while the declarations page refers to "Coverage C—Medical Payments." Although this argument demonstrates commendable ingenuity in search of ambiguity, it is far from persuasive. *See Davenport Peters Co. v. Royal Globe Ins. Co.*, 490 F.Supp. 286 (D.Mass.1980). As mentioned before, a fair reading of the entire policy demonstrates that "Coverage C—Medical Payments" mentioned in the declarations page and "Part II Medical Expenses" are, for all intents and purposes, synonymous.

It is clear that the amended endorsement created two separate classes of coverage for what had originally been one class. By paying the requisite premiums, the insured could not only receive a limited reimbursement for medical expenses but also could have limited protection against loss of income during a period of total disability which could have extended to as much as one year. To repeat what we have said previously, when the policy in question is viewed as a whole, there is no ambiguity upon which the insured or the trial justice could rely.

Accordingly, the insurer's appeal is sustained, the judgment appealed from is va-

cated, and the case is remanded to the Superior Court with direction to deny the insureds' motion for summary judgment and grant the insurer's motion.