# United States Court of Appeals
## For the First Circuit

No. 13-2000

EVAN ARDENTE,

Plaintiff, Appellee,

v.

THE STANDARD FIRE INSURANCE COMPANY,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]


Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.


Daniel F. Sullivan, with whom Wystan M. Ackerman, Dana M. Horton and Robinson & Cole LLP, were on brief for appellant.
Kurt T. Kalberer II, with whom Christopher E. Hultquist and DarrowEverett, LLP, were on brief for appellee.


March 12, 2014


[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** Standard Fire Insurance Company appeals from a district court order awarding Evan Ardente summary judgment on his claim for breach of a yacht insurance policy. Because the policy does not cover the type of damage sustained by Ardente's yacht, we reverse.

## I. Background

Standard Fire insured Ardente's yacht. At some point after purchasing the boat, Ardente noticed that its top speed had decreased and that it was not navigating properly. The parties agree that these were symptoms of water damage to the yacht's hull. They also agree about how water was getting into the hull. A ship's hull has holes for the installation of fixtures, such as port lights. Normally, the material surrounding these so-called "installation holes" is solid laminate, which is waterproof. But in Ardente's yacht, the installation holes are surrounded by balsa wood, which is not waterproof. Water seeping into the balsa wood around the installation holes then spread throughout the hull.

Ardente presented a claim to Standard Fire, which denied coverage on the ground that the claim fell within an exclusion for manufacturing defects. Ardente sued in state court, alleging, among other claims, breach of contract, whereafter Standard Fire removed the case to federal court. The parties then filed cross motions for summary judgment.

The district court granted summary judgment in favor of Standard Fire on all of Ardente's claims except for the breach of contract allegation.  <u>Ardente</u> v. <u>Standard Fire Ins. Co.</u>, 906 F. Supp. 2d 22 (D.R.I. 2012).  On that claim, the district court granted Ardente summary judgment with respect to liability, interpreting the policy in such a way that the damage fell within an exception to the exclusion for manufacturing defects.  The issue of damages was reserved for trial, but the parties reached a stipulation with respect to damages, and the district court entered judgment.  Standard Fire appealed.

## II. <u>Discussion</u>

We review <u>de novo</u> both the district court's grant of summary judgment and its interpretation of the insurance policy. <u>Penn-Am. Ins. Co.</u> v. <u>Lavigne</u>, 617 F.3d 82, 84 (1st Cir. 2010). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmovant, reveals no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  <u>See</u> <u>id.</u>  This case presents no factual issues and asks only whether Ardente's loss is covered by the policy, a legal question properly resolved by summary judgment. <u>See</u> <u>Littlefield</u> v. <u>Acadia Ins. Co.</u>, 392 F.3d 1, 6 (1st Cir. 2004).

The parties agree that Rhode Island law governs the interpretation of the policy.  Under Rhode Island law, if the terms of an insurance policy are unambiguous, there is no further need

for judicial construction.  <u>Amica Mut. Ins. Co.</u> v. <u>Streicker</u>, 583 A.2d 550, 551 (R.I. 1990).  To determine whether ambiguity exists, the policy must be viewed in its entirety and the language must be given its plain, everyday meaning.  <u>Id.</u> at 552.  Where a policy is ambiguous, it will be construed against the insurer.  <u>Id.</u> But "[a] policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context.  A court should not, through an effort to seek out ambiguity when there is no ambiguity, make an insurer assume a liability not imposed by the policy."  <u>McGowan</u> v. <u>Conn. Gen. Life Ins. Co.</u>, 289 A.2d 428, 429 (R.I. 1972).

Ardente's Standard Fire policy explicitly disclaims coverage for "loss or damage caused by or resulting from . . . [d]efects in manufacture, including defects in construction, workmanship and design <u>other than</u> latent defects as defined in the policy" (emphasis added).  This provision is referred to as the "manufacture-defect exclusion," and the emphasized exception to that exclusion is referred to as the "latent-defect exception." The parties agree that use of balsa wood instead of solid laminate constitutes a manufacturing defect, but they disagree over whether the defect falls within the latent-defect exception.

The policy defines "latent defect" as "a hidden flaw inherent in the material existing at the time of the original building of the yacht, which is not discoverable by ordinary

-4-

observation or methods of testing." The parties agree that the use of balsa wood was a flaw that existed at the time of the original building of the yacht and that it was not discoverable by ordinary observation or methods of testing. The only dispute is whether the balsa wood constitutes "a hidden flaw inherent in the material." Standard Fire claims that the material, in this case the balsa wood, was not flawed in any way; that it was perfectly good balsa wood, and that it did what balsa wood does -- absorb water. Unsurprisingly, Ardente takes the opposite tack and argues that while the balsa wood itself was not flawed, the _use_ of balsa wood, instead of solid laminate, was certainly a flaw.

The district court sided with Ardente. It first determined that the phrase, "flaw inherent in the material" -- part of the definition of "latent defect" -- contained a contradiction. According to the district court:

> The word "inherent" requires that a latent defect be characteristic of or intrinsic to the material. The word "flaw" imposes the exact opposite requirement. It includes problems with a specific piece of material, but not problems characteristic of the material itself. In short, giving the terms their plain and reasonable meaning, there can be no such thing as an inherent flaw.

Ardente, 906 F. Supp. 2d at 27. Because ambiguity in an insurance policy is interpreted against the insurer, the district court refused to let this apparent contradiction render the entire latent-defect exception meaningless. Instead, to reflect the

-5-

reasonable expectations of the insured, the district court interpreted "latent defect" to include the flawed use of unflawed material. Said the district court, "The use of balsa wood in these areas was a flaw in the construction of the Yacht, even if it was not a flaw in the underlying material itself." Id. at 28.

We fear that the district court committed the error against which McGowan warns: deeming a policy ambiguous, and thus making an insurer liable, by taking a term out of context and viewing it in insolation. See 289 A.2d at 429. The policy's definition of "latent defect" -- "a hidden flaw inherent in the material existing at the time of the original building of the yacht, which is not discoverable by ordinary observation or methods of testing" -- while not a model of precision, is not self-contradictory. Viewing the definition in its entirety and giving the language its plain, everyday meaning, see Streicker, 583 A.2d at 552, the gist is clear. The phrase refers to flaws in the material used to build the boat that were not noticeable. A quintessential example, we imagine, is a piece of wood with a hairline fracture or with an undetectable termite infestation.

If anything, the definition could be criticized not as self-contradictory but as redundant. It mentions flaws that are "hidden" but goes on to add that they must be "not discoverable by ordinary observation or methods of testing," which is another way of saying "hidden." Indeed, the word "inherent" is yet a third

-6-

means of emphasizing this same quality: In this context, inherent means "within" and conveys that the flaw must impugn the material in a way that evaded observation at the time it was handled. While "inherent" may not have been the best choice of words, and reiterated an already redundant aspect of the definition, the district court failed to give that term its everyday meaning by reading it to require that the flaw inhere in every piece of the type of material under consideration.

We acknowledge that redundancy may itself be a form of ambiguity; indeed, one canon of interpretation urges courts to give each word meaning, thereby avoiding surplusage. See Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 239 (R.I. 2004). But we offer two responses. First, we note a general point -- colorfully made by the Sixth Circuit -- about redundancy in insurance policies:

> [The] label ["redundancy"] surely is not a fatal one when it comes to insurance contracts . . . where redundancies abound. In just this one provision of the 80-page insurance contract, there are at least three truly redundant phrases . . . : (1) "loss or damage"; (2) "caused by or resulting from"; and (3) "faulty, inadequate or defective." As in so many insurance contracts, iteration is afoot throughout--from an exclusion for "war and military action" to one for "fraudulent, dishonest or criminal acts or omissions" to one for flooding of "lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans or any other body of water or watercourse" to numerous others.
>
> . . . .
>
> All of this helps to reveal the limits of the interpretive canon . . . that courts

> must avoid interpreting contracts to contain superfluous words. The canon is one among many tools for dealing with ambiguity, not a tool for creating ambiguity in the first place. Where there are two ways to read the text--and the one that avoids surplusage makes the text ambiguous--applying the rule against surplusage is, absent other indications, inappropriate.

TMW Enterprises, Inc. v. Fed. Ins. Co., 619 F.3d 574, 577-78 (6th Cir. 2010) (Sutton, J.) (citations and internal quotation marks omitted).

Second, accepting that "inherent" in the policy's definition is redundant, we fail to see how this redundancy invites the reading adopted by the district court and urged by Ardente. Granting that ambiguity should be interpreted against the insurer and in light of the reasonable expectations of the insured, if ambiguity lives in the phrase "inherent flaw," that phrase, and not another, should be so construed. That remedy might, for example, entail striking the word "inherent" so that the definition would read, "a hidden flaw ~~inherent~~ in the material existing at the time of the original building of the yacht, which is not discoverable by ordinary observation or methods of testing." But instead of doing that, the district court changed the word "material" to "yacht," such that "latent defect" referred to a "hidden flaw in the yacht." This might have been proper had ambiguity marred the word "material," but the district court found ambiguity not in that term but in the term "inherent flaw."

-8-

For his part, Ardente does argue that the term "material" is ambiguous. He urges us to interpret "material" to mean not the balsa wood, but something like, "all of the stuff that is near the installation holes." Part of that "stuff" is the balsa wood, and it is that fact -- the fact that balsa wood makes up some of the "stuff" surrounding the installation holes -- that, according to Ardente, constitutes the flaw.

Ardente's interpretation would create surplusage, and not that of the relatively benign variety that comes with describing a flaw as both "hidden" and "inherent." His interpretation of the word "material" would allow the latent-defect exception to swallow the manufacture-defect exclusion, rendering the exclusion superfluous and doing violence to the policy. The policy expressly excludes from coverage damage caused by "[d]efects in manufacture, including defects in construction, workmanship, and design other than latent defects." To say that "material" in the definition of "latent defect" refers not to an individual raw ingredient used in constructing the yacht, but rather to a composite of various raw ingredients that appear in close proximity in a particular area of the ship, yields the following result: If a carpenter building the yacht accidentally affixes balsa wood instead of solid laminate around the installation holes, we could refer to the defect as a "latent defect" instead of a "defect in construction or workmanship." Similarly, if an engineer drawing the blueprints of

the yacht accidentally calls for balsa wood instead of solid laminate to be placed around the installation holes, we could refer to that defect as a "latent defect" instead of a "defect in design." But it is clear that the policy meant to exclude from coverage precisely those types of defects.

As a last ditch effort to support affirmance, Ardente makes two arguments based on sources that are irrelevant here. First, Ardente argues that the policy's definition of "latent defect" guts the term of a broader meaning that it allegedly enjoys under Rhode Island common law. Citing one Rhode Island case and Black's Law Dictionary, Ardente contends that, at common law, "latent defect" would mean a hidden flaw in the yacht, as opposed to a hidden flaw in the balsa wood. But in the case cited, the policy did not define "latent defect," see Neri v. Nationwide Mut. Fire Ins. Co., 719 A.2d 1150, 1153-54 (R.I. 1998), and whatever interpretation courts might adopt in the absence of an explicit policy definition has no bearing on this case, where Ardente's policy defines the term.

Second, Ardente accuses Standard Fire of defining "latent defect" to include flaws that some other insurance policies capture with a separate "faulty materials" exception. Ardente cites TRAVCO Insurance Co. v. Ward, 715 F. Supp. 2d 699, 710 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013), where, because the policy explicitly excluded loss caused by both "latent defects" and

"faulty materials," the court avoided surplusage by interpreting the undefined term "latent defect" not to include faulty materials. Id. But Standard Fire was free to define "latent defect" to include faulty materials and, given that its policy contains no separate exclusion for "faulty materials," that seems to be precisely what Standard Fire did.

Because the damage to Ardente's yacht does not fall within the latent-defect exception to the manufacture-defect exclusion, Standard Fire -- not Ardente -- was entitled to summary judgment on the breach of contract claim. We need not reach Standard Fire's alternative arguments supporting reversal.

### III. Conclusion

For the foregoing reasons, the district court's order granting Ardente summary judgment on his breach of contract claim is **REVERSED**, the judgment in favor of Ardente is **VACATED**, and the district court is directed to grant Standard Fire's cross motion for summary judgment and to enter judgment in Standard Fire's favor. No costs are awarded.