SENTRY INSURANCE COMPANY

v.

Anthony GRENGA et al.

No. 88–187–Appeal.

Supreme Court of Rhode Island.

April 3, 1989.

Mark B. Morse, McOsker, Isserlis & Davignon, Thomas C. Angelone, Hoddosh, Spinella & Angelone, Providence, for Sentry Ins. Co.

Raymond J. Daniels, Charles A. Hirsch, Kirshenbaum & Kirshenbaum, Cranston, for Grenga.

OPINION

KELLEHER, Justice.

This dispute concerns the interpretation of an insurance contract issued by Sentry Insurance Company (Sentry) to Jeanne L. Spillane (Spillane). The dispute centers upon the provisions of the insurance contract.

On April 23, 1984, Anthony Grenga (Grenga) was traveling in an automobile with his wife, Spillane. She owned the automobile and insured it through Sentry. The automobile was involved in a collision with an automobile owned and operated by Manuel DaSilva (DaSilva). DaSilva was insured by the General Accident Insurance Company of Philadelphia, Pennsylvania. Both Spillane's and DaSilva's insurance policies provided the minimum limits of coverage allowed in accordance with Rhode Island General Laws 1956 (1982 Reenactment) § 31–31–7. Grenga settled his claim against DaSilva for the $25,000 limit of his policy.

Grenga suffered serious injuries in the collision, including a herniated lumbar disc. He contends that his damages approximate $150,000 to $200,000. On January 27, 1986, Grenga filed a demand for arbitration with the American Arbitration Association pursuant to the Sentry/Spillane contract. He asks the arbiter to award him $50,000, plus interest, under the underinsured-motorist coverage of the Sentry/Spillane contract. Grenga contends that DaSilva was underinsured because the liability insurance he carried was inadequate to reimburse Grenga for the damages he sustained.

Sentry filed this action seeking a declaratory judgment relative to the rights, status, and legal obligations of the litigants as a result of the insurance contract issued by Sentry. Sentry's motion for a stay of arbitration pending a declaration of liability was granted. Subsequently a Superior Court justice, in a written opinion, ruled that Sentry's insurance contract was "clear and free from ambiguity" and that it did "not afford 'underinsured' motorist coverage."

The first issue on appeal is whether the Superior Court justice erred when he ruled that Sentry was not required to provide underinsured-motorist protection. In determining if error had been committed at the trial level, we must consider Sentry's contract in its entirety while giving the words their "plain, ordinary and usual meaning." *West v. Commercial Ins. Co. of Newark, New Jersey*, 528 A.2d 339, 341 (R.I.1987) (quoting *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I. 1983)). If the terms of the policy are clear and unambiguous, the task of judicial construction is complete. *Malo*, 459 A.2d at 956. The parties are bound by the unambiguous terms as written. *Id.*

However, when an insurance contract is ambiguous or subject to more than one reasonable interpretation, it will be strictly construed against the insurer. *West*, 528 A.2d at 342 n. 2. The court is to construe the words to mean what the ordinary insured would have understood them to mean, not what the insurer intended them to mean. *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 325–26, 373 A.2d 810, 812 (1977).

■ Sentry's insurance contract contains two distinct documents. We are required, in determining if there is any ambiguity, to consider both documents. The first document is a single typewritten declarations sheet, and the second is a printed twenty-four-page pamphlet entitled "Your Plain Talk Car Policy," which explains the coverages provided.

The declarations sheet in pertinent part provides that "we insure you only for those coverages you've purchased. You've purchased only those for which both a limit of liability and a specific premium charge are shown." The declarations sheet contains the following list of coverages and premiums:

| "COVERAGE | LIMIT OF LIABILITY | | |
| | EACH PERSON | EACH OCCURRENCE | Car A |
| | | $100,000 | 89.66 |
| "LIABILITY | | | |
|    Medical Expense | $3,000 | | |
|    Uninsured/Underinsured | | Each Accident | |
|       Bodily Injury Liab | $25,000 | $50,000 | |
|       Property Damage Liab | | $25,000 | 8.50 |
| | | LIMIT OF LIABILITY | |
| "COMPREHENSIVE | ACV LESS | $50 Deductible | 71.95 |
|    PLUS TOWING LIMIT $75 | | | |
| | | TOTAL PREMIUM PER CAR | 170.11" |

(Emphasis added.)

The declarations sheet clearly lists uninsured/underinsured coverage as well as the limit of liability and the premium charged.

The "plain talk" pamphlet specifically incorporates the declarations page. It provides that "[u]pon your payment of the premium, we agree that this policy provides the various kinds of insurance you have selected as shown on the enclosed declarations page. The declarations page is a part of this policy." The pamphlet then goes on to explain the various types of coverage provided. The terms "uninsured motorist insurance" and "uninsured motor vehicles" are defined. However, at no time is the term "underinsured motorist insurance," which appears on the declarations sheet, ever defined or explained. Also, the "plain talk" pamphlet never disclaims the provision of "underinsured motorist coverage."

We think that when the declarations sheet and the "plain talk" pamphlet are read together, the ambiguity is obvious. The term "underinsured coverage" is used on the declarations page and never mentioned or defined again. The trial justice erred in deciding that the contract was not ambiguous.

We are now left to construe the contract, giving the words their plain and ordinary meaning while resolving all ambiguities against the insurer. *West*, 528 A.2d at 342

n.2. The contents of the declarations sheet is of paramount importance because it is common knowledge that the detailed provisions of insurance contracts are seldom read by the consumer. *Elliott Leases Cars, Inc.*, 118 R.I. at 329, 373 A.2d at 813. Also, the declarations sheet is a typed document prepared for each individual insured whereas the "plain talk" pamphlet is a printed document given to all insureds. The ordinary insured would assume that such a personalized document would contain any significant limitations on coverage.

The declarations sheet states that Spillane purchased "uninsured/underinsured" coverage. The normal purchaser of insurance would understand the term "underinsured coverage" to mean that he or she will be compensated, up to the limit of coverage, if injured by a driver carrying liability insurance insufficient to meet his or her losses. Sentry may have intended the term "underinsured coverage" to mean something completely different, but the plain talk found on the declarations sheet clearly indicates otherwise. At no place in the policy do we find any attempt to disclaim the provision of "underinsured coverage," nor did the insurer seek to convey to the insured a different understanding of the term "underinsured coverage." We hold that Sentry is required to provide the "underinsured motorist coverage" referred to on the declarations sheet.

█ The only remaining issue is whether an arbitrator can award Grenga prejudgment interest in excess of the $25,000 uninsured/underinsured liability limit of the Sentry/Spillane contract. In *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935, 937 (R.I.1983), we held "that arbitrators should add prejudgment interest to their awards unless the parties specifically provide otherwise by agreement." Also, we have decided that "the imposition of interest in arbitration proceedings is a matter addressed to the arbitrators and that we shall accord the finding made in this area by an arbitrator or arbitrators the same deference that we have given to them in the past." *Mangiacapra*

*v. Sentry Insurance Co.*, 517 A.2d 1041, 1042 (R.I.1986).

In this jurisdiction an arbitrator has the authority to award prejudgment interest in excess of the policy limits. His or her decision in this area will only be set aside for corruption, partiality, misconduct, or a failure to make a final and definite award upon the controversy submitted. These grounds are set forth in detail in G.L.1956 (1985 Reenactment) § 10–3–12. An award will be overturned for a violation of any of the four factors found in § 10–3–12 or if the award is otherwise completely irrational. *Romano v. Allstate Insurance Co.*, 458 A.2d 339, 341 (R.I.1983).

Grenga's appeal is sustained. The stay previously imposed is vacated. The case is remanded to the Superior Court for further proceedings.