AMICA MUTUAL
INSURANCE COMPANY

v.

Paul W. STREICKER et al.

No. 89–229 Appeal.

Supreme Court of Rhode Island.

Dec. 12, 1990.

Thomas R. Bender, Providence, for plaintiff.

Raymond A. LaFazia, Gunning, LaFazia & Gnys, Inc., Providence, for defendant.

## OPINION

SHEA, Justice.

This is an appeal from a Superior Court order granting the defendants' motion for partial summary judgment and dismissing the remainder of the plaintiff's amended complaint for declaratory judgment. We reverse.

This case was submitted to the trial justice upon an agreed statement of facts. The plaintiff, Amica Mutual Insurance Company (Amica), insured Andrew Burkhardt, Jr. (Burkhardt), under an automobile liability insurance policy. The policy provided liability coverage with a limit of $300,000 per accident and uninsured/under-insured-motorist coverage also with a limit of $300,000 per accident. This insurance policy had been renewed on January 1,

1987, and was in effect on March 15, 1987, when a vehicle driven by Burkhardt and registered to his wife, Lynn Burkhardt, collided with a guardrail on Wampanoag Trail in East Providence, Rhode Island. One of defendants, Paul W. Streicker (Streicker), was a passenger in that vehicle when the collision occurred. Streicker suffered severe injuries as a result of the collision.

Amica paid to Streicker and his wife, Kathleen Streicker, $300,000, representing the full amount of Amica's liability coverage under the Burkhardts' policy. The parties executed a release and structured settlement agreement apportioning $180,000 to Paul Streicker and the remaining $120,000 to Kathleen Streicker.

Subsequently, Streicker and his wife, individually and on behalf of their minor children, Robert and Eve Streicker, claimed that their damages exceeded the settlement amount and sought compensation pursuant to the uninsured/underinsured-motorist provision of the Burkhardts' policy. In addition, the Streickers filed claims with their insurers, Merchants Mutual Insurance Company (Merchants Mutual) and Allstate Insurance Company (Allstate), who provided uninsured/underinsured-motorist coverage to Paul and Kathleen Streicker. In November 1988, the Streickers demanded arbitration with Amica, Merchants Mutual, and Allstate. It is not disputed that Paul Streicker is an insured under the Burkhardts' policy.

On October 27, 1988, Amica filed a complaint in the Superior Court for a declaratory judgment against defendants Paul Streicker, Kathleen Streicker, Robert Streicker, Eve Streicker, Merchants Mutual, and Allstate, requesting a declaration that he was not entitled to uninsured/underinsured-motorist benefits pursuant to the Burkhardts' policy. The Streickers moved for partial summary judgment on the issue of uninsured/underinsured-motorist coverage and requested

that the remainder of Amica's complaint be dismissed.[1] Amica filed an objection and moved for partial summary judgment, arguing that the Burkhardt vehicle was not "uninsured" under the terms of either the insurance policy or the definition contained in G.L.1956 (1989 Reenactment) § 27–7–2.1.

The trial justice determined that the Burkhardt vehicle was an "uninsured" vehicle under the Amica policy and that Streicker was entitled to uninsured/underinsured-motorist benefits. The trial justice subsequently stated that his ruling applied to Mrs. Streicker and her two children as well. On March 10, 1989, an order was entered granting defendants' motion for partial summary judgment, dismissing the remainder of plaintiff's complaint in regard to the Streickers, and denying plaintiff's motion for partial summary judgment.[2]

Amica contends on appeal that the trial justice incorrectly ruled that Streicker was entitled to collect uninsured/underinsured-motorist benefits and, therefore, that it was error to grant the Streickers' motion for partial summary judgment and motion to dismiss. To support this contention, Amica argues (1) that the Burkhardt vehicle was not uninsured within the meaning of the language of the Amica policy or under the definition contained in § 27–7–2.1 and (2) that the trial justice committed error in dismissing that portion of the complaint concerning the interpretation of the "other insurance" provision of the Amica policy.

■■■ We first address the issue of whether Paul Streicker is entitled to collect uninsured/underinsured-motorist benefits under the Burkhardts' policy. It is well settled under Rhode Island law that when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. The contract terms must be applied as written and the parties bound by them. *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I. 1983). Therefore, before we may construe

1. The Streickers moved to dismiss that portion of the complaint seeking an interpretation of the "other insurance" provision of the Amica policy.

2. The declaratory-judgment action against Merchants Mutual and Allstate remains pending in Superior Court.

the provisions of an insurance policy, this court must first find that an ambiguity exists. *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). As part of the process of determining whether an ambiguity exists, it is necessary that the insurance policy be viewed in its entirety and that the language employed be given its "plain, ordinary and usual meaning." *Sentry Insurance Co. v. Grenga*, 556 A.2d 998, 999 (R.I.1989)(quoting *West v. Commercial Insurance Co. of Newark*, 528 A.2d 339, 341 (R.I.1987)); *Hughes v. American Universal Insurance Co.*, 423 A.2d 1171, 1173 (R.I.1981). In situations in which ambiguity does exist in an insurance policy or the terms are subject to more than one reasonable interpretation, the contract will be strictly construed against the insurer. *Grenga*, 556 A.2d at 999; *Malo*, 459 A.2d at 956; *Bush*, 448 A.2d at 784.

■ The Streickers' contention that they are entitled to uninsured/underinsured-motorist coverage is based on a reading of the Information Digest, a pamphlet Amica sends to its policyholders as an explanation of the coverages provided. This pamphlet provides in pertinent part:

> "Uninsured Motorists—Bodily Injury (including Underinsured Motorists) Under this coverage your own insurance company pays for bodily injury caused by an uninsured or hit-and-run motorist, or by an underinsured motorist.
>
> "An uninsured motorist is one who does not carry Liability insurance to pay for injury to others.
>
> "An underinsured motorist is one who does carry Liability insurance but the amount of insurance available under that motorist's policy is not enough to pay the damages you are legally entitled to recover.
>
> "You and family members living in your household are covered while riding in your auto or as pedestrians. *Guests riding in your auto are also covered.*" (Emphasis added.)

The Streickers point out that nowhere else in the Burkhardts' policy is there specific reference to or definition of the term "underinsured motorist." They argue, therefore, that a reading of the Information Digest in conjunction with the Personal Auto Policy reveals an ambiguity identical to the one this court recognized in *Sentry Insurance Co. v. Grenga*, 556 A.2d 998 (R.I.1989). In *Grenga* a contested insurance contract contained a single declaration sheet and a twenty-four-page pamphlet that explained the coverages provided. Although the declaration sheet listed underinsured coverage and the pamphlet specifically incorporated the declaration sheet, at no time was underinsured-motorist insurance defined. This court held that when the two documents were read together, "the ambiguity is obvious" and that, therefore, the policy should be construed so as to entitle the claimant to underinsured-motorist benefits. *Id.* at 999.

We concede that the Streickers' analysis is not unreasonable if we base our interpretation solely on the provisions of Amica's Information Digest. Such a limited analysis, however, would establish an ambiguity unnecessarily. We have said before that "[a] court should not, through an effort to seek out ambiguity when there is none, make either party assume a liability not imposed by the policy." *Bush*, 448 A.2d at 784 (citing *McGowan v. Connecticut General Life Insurance Co.*, 110 R.I. 17, 289 A.2d 428 (1972)). It is necessary, therefore, to accord equal importance to all relevant parts of the Burkhardts' policy and not simply establish ambiguity by viewing a word in isolation or by taking a phrase out of context. *Hughes*, 423 A.2d at 1173.

When we consider all relevant language in the Burkhardts' policy, the ambiguity argued by the Streickers disappears. The Information Digest is prefaced by the following paragraph:

> "Brief Description of Coverages—The following descriptions of auto insurance coverages are intended to provide a brief explanation only. *Exclusions*, conditions, limitations and extent of benefits are not explained. *You must see the policy for full details of each coverage.*" (Emphasis added.)

When we examine the policy for the full details regarding uninsured motorist coverage, we do in fact find the following exclusion:

"However, 'uninsured motor vehicle' does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any family member unless it is your covered auto to which Part A of the policy applies and liability coverage is excluded for damages sustained in the accident."

We believe that the intent of this exclusion is to prevent an individual from recovering under both the liability and the uninsured/underinsured-motorist provisions of the policy. The language is clear and unambiguous and, when viewed in its entirety, is susceptible of only one interpretation. The Streickers are excluded from obtaining uninsured/underinsured-motorist benefits under the policy.

■ We next address whether Amica's exclusion denying the Streickers uninsured/underinsured-motorist benefits contravenes the public policy and legislative purpose underlying § 27–7–2.1. The ultimate issue we must decide is whether public policy requires that a victim recover under the tortfeasor's uninsured motorist provision after receiving liability benefits despite language to the contrary in the tortfeasor's policy. Section 27–7–2.1 provides in relevant part:

"Uninsured motorist coverage.—(A)(1) No policy insuring against loss resulting from liability imposed by law for property damage * * * shall be delivered or issued * * * unless coverage is provided

therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles."

This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor. Thus the Legislature mandated that insurers afford protection to the named insured against economic loss resulting from the negligent operation of uninsured motor vehicles.[3] *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 321, 259 A.2d 408, 415 (1969). In 1985 the Legislature determined that those insured should also be protected from operators of underinsured vehicles and thus expanded the definition of uninsured motorist to include an underinsured motorist.[4]

We believe that an exclusion that denies uninsured-motorist coverage to an insured who has already obtained liability benefits from the same policy does not contravene this legislative purpose. Although the legislative purpose behind the statute was to protect an insured from economic loss, we do not believe it was intended to guard against all economic loss. We must impose reasonable limitations on the extent that the uninsured-motorist statute is construed to protect an insured because public policy also dictates that we construe the statute in a "manner that affords insurers some financial protection." *DiTata v. Aetna Casualty & Surety Co.*, 542 A.2d 245, 248 (R.I.1988).

---

3. General Laws 1956 (1982 Reenactment) § 31–31–7, as amended by P.L.1988, ch. 81 § 1 provides for the minimum mandated amounts of uninsured motorist coverage that insurers must make available to the named insured. Although an insurer must offer an amount of uninsured-motorist coverage equal to the liability-coverage limit, a policy holder need only purchase the statutorily mandated minimum of $50,000.

4. An underinsured motorist was originally defined as one who "carries automobile liability insurance with coverage in an amount less than the amount of damages that persons insured

pursuant to this section are legally entitled to recover." P.L.1985, ch. 197, § 1. In 1986 the wording was changed slightly: an underinsured motorist was defined as one who "carries automobile liability insurance with coverage in an amount less than the limits that persons insured pursuant to this section are legally entitled to recover." P.L.1986, ch. 334, § 1. The statute now defines an underinsured motorist as one with coverage in an amount less than the "limits or damages" that persons insured are legally entitled to recover. G.L.1956 (1989 Reenactment) § 27–7–2.1(B)(1). The parties agree that the 1986 amendment is applicable here.

We agree with Amica's contention that the exclusion in the policy does not deny the Streickers any of the protections that are embodied in § 27–7–2.1. The exclusion simply removes from the definition of "uninsured motor vehicle" those vehicles that are covered by the liability insurance under the same policy. Thus Amica intended to limit its total liability to an insured to $300,000, either under the liability coverage or under the uninsured/underinsured-motorist coverage. Although it is an unfortunate consequence that the Streickers are not fully compensated for their losses, this court is still obligated to respect the express terms and conditions of an insurance contract that are not in violation of public policy. *McGowan v. Connecticut General Life Insurance Co.*, 110 R.I. 17, 19, 289 A.2d 428, 429 (1972). As a matter of contract law, this exclusion represents Amica's legitimate attempt to protect itself against claims for double recovery.

We are persuaded by the reasoning in *Millers Casualty Insurance Co. of Texas v. Briggs*, 100 Wash. 2d 1, 665 P.2d 891 (1983), where the Supreme Court of Washington upheld the validity of an exclusion identical to the one contained in the Burkhardts' policy. In *Briggs* the court reasoned that the exclusion was not in contravention of public policy because the claimant did not pay a premium to the insurer for uninsured motorist-coverage. Thus there would be no danger that the insurer would "gain a windfall if it is not forced to pay under both provisions of the policy." *Id.* at 7, 665 P.2d at 894 (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds*, 55 Wash. L. Rev. 819, 827 (1980)). Similarly in the case before us, the Streickers did not pay a premium for the uninsured/underinsured-motorist coverage that they seek to benefit under. The *Briggs* court also recognized that the enforcement of the exclusion does not leave the claimant completely without compensa-

tion. As in the case before us, the Streickers are not without compensation since they have recovered $300,000 under the liability portion of the Burkhardts' policy. Furthermore, the Streickers may possibly obtain uninsured-motorist benefits under their own insurance policies with Merchants Mutual and Allstate. This would lead to a more logical result since the Streickers bargained for such coverage by paying the premiums for uninsured-motorist coverage with Merchants Mutual and Allstate—but not with Amica.

We are in accord with the Supreme Court of Washington's belief that these conclusions

"[are] dictated by common sense and the consuming public's general understanding of coverage under these circumstances. The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance." *Briggs*, 100 Wash. 2d at 8, 665 P.2d at 895.

In the case before us we believe that a dual recovery under the liability and uninsured/underinsured-motorist provisions would produce a result that is in derogation of the legislative purpose underlying § 27–7–2.1.[5] Therefore, we hold that the exclusion denying the Streickers recovery under the uninsured-motorist provisions of the Burkhardts' policy is valid.

Amica also contends that the trial justice committed error by dismissing, in regard to

---

**5.** The majority of jurisdictions that have passed on this issue do not allow the guest passenger to recover uninsured-motorist benefits from the host driver's insurer in circumstances in which the sole cause of the guest's injuries is the negligence of the driver. *Sullivan v. State Farm*

*Mutual Automobile Insurance Co.,* 513 So.2d 992 (Ala.1987); *Peel v. Allstate Insurance Co.,* 522 So.2d 505 (Fla. Dist. Ct.App.1988); *Moore v. Brumfield,* 459 So.2d 21 (La. Ct.App.1984); *Meyer v. Illinois Farmers Insurance Group,* 371 N.W.2d 535 (Minn.1985).

the Streickers, that portion of the complaint requesting a declaratory judgment concerning the interpretation of the "other insurance" provision of the Burkhardts' policy. As a result of our holding in this case, that issue is now moot and need not be addressed.

For these reasons the plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.