**AETNA CASUALTY & SURETY CO.**

v.

**Paul GRAZIANO et al.**

**No. 90–121–Appeal.**

Supreme Court of Rhode Island.

March 14, 1991.

James Marusak, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

Joseph Salvadore, William A. Gosz, Providence, for defendants.

## OPINION

**WEISBERGER, Justice.**

This case comes before us on the defendants' appeal from a motion granting a declaratory judgment to the plaintiff, Aetna Casualty & Surety Company (Aetna).

We affirm. The facts of the case insofar as they are pertinent to this appeal are as follows.

On July 19, 1986, defendants, Paul Graziano (Graziano), George Soukas (Soukas), and Bruce Cafaro (Cafaro), were passengers in a vehicle operated by Michael Graziano (Michael), which was involved in a single-vehicle automobile accident allegedly caused by Michael's negligence. The defendants sustained injuries that they collectively value in excess of $100,000.

At the time of the accident Michael was insured by Aetna. His policy provided a liability limit of $100,000 per accident and an uninsured/underinsured-motorist limit for the same amount. The plaintiff offered to pay defendants the $100,000 liability limit to be shared aggregately. However, defendants claimed that because of the severity of their injuries a one-third share of the liability limit was insufficient to satisfy their losses. In an effort to recover fully, defendants claimed that for the purposes of G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1985, ch. 197, § 1, Michael was an "underinsured" motorist and that they, therefore, qualified for and were entitled to the $100,000 underinsured-motorist coverage.

Aetna denied that defendants were entitled to reach the underinsured-motorist benefits. According to Aetna, defendants are precluded from reaching the underinsured-motorist benefits by the limiting provision in Michael's policy, which sets-off any recovery that one might have under the underinsured-motorist section of the policy (section C) by the amount one has collected or may collect under the liability section of the same policy (section A). Therefore, Aetna maintained that since defendants could recover the $100,000 liability coverage, they could not proceed to recover additional funds under the underinsured-motorist provision of the policy.

On December 5, 1988, Aetna filed an action in Providence County Superior Court, seeking declaratory judgment and interpleader of defendants' claims relating to the proceeds of the underinsured-motorist section of Michael's policy. Cafaro and Soukas's answer to Aetna's complaint included a counterclaim for declaratory relief. The defendants subsequently filed a motion for summary judgment, to which Aetna objected and countered by filing a cross-motion for summary judgment. The matter was heard by a Superior Court justice on January 16, 1990, who entered judgment for plaintiff on January 31, 1990. The defendants Cafaro and Soukas filed their appeal on February 2, 1990, and were followed by defendant Paul Graziano, who filed his appeal on February 13, 1990.

In support of their appeal, defendants argue that they are "covered" persons who are entitled to receive the benefits of Michael's underinsured-motorist coverage in addition to his liability coverage. They maintain not only that the net effect of Aetna's set-off provision is to deny adequate coverage to those who suffer serious injuries but also that the set-off provision is contrary to the public policy enunciated in the uninsured-motorist coverage provided by § 27–7–2.1.

The set-off provision of Michael's policy with Aetna provides:

"The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of covered persons * * *. Any payment under this coverage to or for a covered person will reduce any amount that person is entitled to recover under the Liability Coverage of this policy." Aetna policy section C.

■ The effect of the policy is controlled by the actual terms included in the contract. "When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them." *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983). In determining whether the policy is clear and unambiguous we begin by giving the words their "plain, ordinary, and usual meaning." *Id.*

Aetna argues that the language in the policy clearly provides that any amount

paid for damages under the underinsured-motorist provision will be reduced by any amount paid under the liability provisions of the policy. After reading the policy in its entirety, we agree that the language is clear and unambiguous and susceptible of only one interpretation. *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550 (R.I.1990). The defendants could only reasonably expect to recover $100,000 from the Aetna policy—either under the liability provision *or* the underinsured-motorist provision, but not under both.

■ Apart from the issue regarding the clarity of the policy, defendants contend that the set-off language included in the insurance policy is contrary to public policy as set forth in G.L.1956 (1979 Reenactment) § 27-7-2.1, as amended by P.L. 1985, ch. 197, § 1.[1] The pertinent part of § 27-7-2.1 provides:

"(B) For the purposes of this section 'uninsured motorist' shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the amount of damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness or disease, including death resulting therefrom.

"A person entitled to recover damages pursuant to this section 27-7-2.1 shall not be required to make a claim against or bring an action against the uninsured or underinsured tortfeasor as a prerequisite to recover his damages from the insurer providing coverage pursuant to this section. *In the event that the person entitled to recover against an underinsured motorist recovers from the insurer providing coverage pursuant to this section, said insurer shall be entitled to subrogation rights against the underinsured motorist and his insurance carrier.*" (Emphasis added.)

The trial justice indicated in his decision that "[t]here is no question that if there was a two vehicle accident and Paul [Graziano] were to recover a hundred thousand dollars from the liability carrier of the other operator, that he would be covered and be entitled for coverage C claim of up to a hundred thousand dollars in order to make him whole under the Aetna's policy." However, in a single-car collision in which the injured have already asserted a claim for negligence and collected under the liability provisions, the set-off clause validly denies access to the underinsured-motorist provisions through a contract claim. The reference to subrogation rights in the statute supports this interpretation. It would allow the injured party's insurance carrier to recover amounts paid under its underinsured-motorist provision to its injured policyholder from the underinsured tortfeasor's insurance carrier. This indicates the Legislature's intent that the underinsured-motorist provisions apply when two insurance companies are involved.

The defendants cite several cases in support of their contention that the 1985 amendment extended underinsured-motorist coverage to *any* injured party who was not fully compensated under a liability provision. *See Sentry Insurance Co. v. Grenga*, 556 A.2d 998 (R.I.1989); *Van Marter v. Royal Indemnity Co.*, 556 A.2d 41 (R.I. 1989); *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 259 A.2d 408 (1969). These cases are distinguishable by virtue of the fact that each of them involved a *named insured* who sought un-

---

1. The defendants claim that the 1985 amendment, P.L.1985, ch. 197, § 1 (enacted on June 25, 1985), is applicable in this case since Michael's policy was issued or renewed on April 21, 1986. The plaintiffs maintain that the 1986 amendment (enacted one month prior to the accident) may be applied back to the date of renewal since it merely codifies a pre-existing legislative intent. The 1986 amendment, P.L. 1986, ch. 334, § 1, defines an "underinsured motorist" as "[t]he owner or operator of a mo-

tor vehicle who carries automobile liability insurance with coverage in an amount less than the *limits* that persons injured pursuant to this section are legally entitled to recover because of bodily injury, sickness or disease, including death resulting therefrom." Although plaintiff's argument is interesting, adherence to the 1986 statute rather than to the 1985 statute would not alter our decision. In this opinion, we shall apply the 1985 statute.

derinsurance provisions from their own policies when the negligent operators' liability limits proved insufficient to compensate them for their damages.

In *DiTata v. Aetna Casualty & Surety Co.*, 542 A.2d 245, 247 (R.I.1988), this court specifically stated:

> "The statute requires insurance carriers to provide protection for those claimants who voluntarily contract with licensed carriers for liability coverage as against uninsured operators. [Citing *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 356, 223 A.2d 447, 450 (1966).] It thus protects those who have attempted to protect the public interest and themselves by purchasing insurance."

Applying this rule to the instant case, defendants would be justified in applying for the underinsured motorist coverage provided by their own individual insurance policies since the liability provision of the tortfeasor, Michael, did not fully satisfy their damages. However, since the liability provision of Michael's policy has already been expended, the underinsured-motorist provision of *his* policy is not available to these defendants. In these circumstances, Aetna "does not bear the responsibility of making them [defendants] whole." *Id.* at 248.

*Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550 (R.I.1990) which was recently decided by this court, is almost directly on point.[2] In that case Streicker was injured as a passenger in a car that collided with a guardrail. Although the Streickers received the full $300,000 amount that constituted the limit of the automobile operator's liability insurance, they claimed that their injuries exceeded the settlement amount and therefore attempted to reach the operator's underinsured-motorist coverage as well. We initially held in *Streicker*, as in this case, that a set-off provision in the operator's insurance policy, similar to Aetna's set-off provision in Michael's policy, was

clear and unambiguous. We then proceeded to address Streicker's contention that Amica's limiting provision undercut the legislative purpose and public policy behind § 27-7-2.1. Once again we held that "[t]his statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." *Streicker*, 583 A.2d at 553. The primary purpose of the statute was to protect the named insured from uninsured tortfeasors, and its intention is not circumvented by denying underinsured-motorist benefits to anyone, including the named insured, who has already recovered under the liability provisions of the same policy. *Id.* at 553. Clear and unambiguous set-off provisions are valid attempts by the insurance companies to avoid claims for double recovery, which could result in prohibitive costs for insurance carriers as well as for those paying premiums, and as such are not contrary to public policy.

For the reasons stated, the defendants' appeal is denied and dismissed. The declaratory judgment entered in the Superior Court is hereby affirmed.

---

**2.** The only difference between the Amica policy in *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550 (R.I.1990) and Michael's policy with Aetna is that Aetna's set-off provision is even more explicit than Amica's provision regarding the unavailability of underinsured-motorist coverage after the liability coverage has been collected.