Robert **PACITTI** et al.

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

No. 92–41–A.

Supreme Court of Rhode Island.

June 29, 1993.

Kevin McAllister, Providence, for plaintiffs.

John Boland, Boyer, Reynolds & DeMarco, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case is before us on appeal by the plaintiffs, Robert and Joyce Pacitti, from a Superior Court order denying their claim for additional death benefits pursuant to an insurance policy with the defendant, Nationwide Mutual Insurance Company (Nationwide).

The parties stipulated to the following facts. The plaintiffs are the parents and next of kin of the deceased, Christopher Pacitti (Christopher). On April 17, 1986, Christopher was a passenger in plaintiffs' 1983 Honda automobile when a vehicle driven by an uninsured motorist struck the Honda. Christopher was killed in the accident. Prior to the fatal accident, Nationwide had issued two separate automobile insurance policies to plaintiffs. The first policy, No. 5138D183912, covered plaintiffs' Honda. The second policy, No. 5138D183923, covered plaintiffs' 1983 Saab automobile. Both automobile policies provided uninsured-motorist coverage and medical-payment benefits.

Pursuant to the terms and conditions of both policies, Nationwide paid uninsured-motorist benefits to plaintiffs. Nationwide also paid additional death benefits to plaintiffs pursuant to the Medical Payments section of the Honda policy. On April 14, 1989, plaintiffs filed a petition for declaratory judgment in the Superior Court to determine whether plaintiffs were also entitled to additional death benefits under the Medical Payments section of the Saab policy. The trial justice entered an order in favor of Nationwide, stating that the language of the Saab policy, as amended, prevented plaintiffs from recovering additional death benefits under that policy's medical-payments provisions.

The primary issue of this case is the construction of the Saab policy's medical-payments coverage. The Coverage subsection of the Medical Payments section provides:

"Under this coverage, [Nationwide] will pay medical and funeral expenses to or for you or any relative living in your household. We will pay these benefits for accidental bodily injury, sickness, disease, or death suffered while occupying *your auto.*" (Emphasis added.)

The term "your auto" is described in the policy's Definition section as "the vehicle or vehicles described in the attached Declarations." The policy's declaration page lists only the 1983 Saab. Thus, in order to recover medical payments under the policy, the insured must have been a passenger in the 1983 Saab at the time of the accident.

Following the Coverage subsection, the Medical Payments section is further divided into three subsections that extend, exclude, or otherwise limit the extent of medical-payment coverage. The final subsection under the policy's medical-payments section is entitled "Limits and Conditions of Payment." This subsection was later amended to include an added death-benefit provision, which provides that Nationwide

"will pay a death benefit of $10,000 for any insured using an approved motor vehicle seat belt or child restraint system at the time of the accident. Death must occur within one year and as a result of the accident."

Both parties stipulated that Christopher was wearing a child-restraint device at the time of the accident. It is also undisputed that Christopher died as a result of and within one year of the accident. Thus the sole question that must be resolved is whether the added death-benefit provision applies only to insureds occupying the Saab at the time of the accident or whether the death benefit covers insureds occupying any automobile.

■ Coverage under the Medical Payments section of the Saab policy is expressly limited to injury or death sustained by an insured while occupying the Saab. Conversely the added death-benefit amendment contains no such limiting language. The amendment merely states that Nationwide will pay a death benefit for *any insured* as long as the insured was wearing a seat belt or a child-restraint device and died within

one year of and as a result of the accident. The plaintiffs claim that because the amendment's self-contained language does not state that the amendment is subject to the restrictions contained in the policy's medical-payments coverage section, the added death benefit is available to an insured who is killed while occupying *any* motor vehicle. According to plaintiffs, the added death-benefit amendment is a separate and an independent provision, limited only by the criteria set forth in the amendment itself. Because Christopher satisfied these criteria, plaintiffs claim that Christopher's estate is entitled to the $10,000 death benefit.

■ It is well settled under Rhode Island law that when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 551 (R.I.1990).

"When a court is called upon to interpret the terms of an insurance policy * * * effect must be given to the plain, ordinary meaning of the language employed. * * * When the terms of the policy are subject to more than one reasonable interpretation, then that language should be construed strictly against the insurance company. * * * A court should not, however, stretch its imagination in order to read ambiguity into a policy where none is present." *Mullins v. Federal Dairy Co.,* 568 A.2d 759, 762 (R.I.1990).

We agree with the trial justice's assessment that "[t]he endorsement essentially serves as an amendment to certain sections of the policy. To interpret properly the full extent of insurance coverage, one must read the endorsement in conjunction with or as a substitute for the relative portions of the original policy." After reading the added death-benefit amendment in conjunction with the related portions of the original policy, we find Nationwide's coverage language to be unambiguous.

This court is of the opinion that it would contradict the insurance policy's plain and ordinary meaning to treat the amendatory endorsement as an independent document free from the restrictions of the original policy. After all, the added death-benefit provision falls within the Limits and Conditions of Payment subsection of the policy's medical-payments category. A plain reading of the policy's Medical Payments section leads us to conclude that the Limits and Conditions of Payment subsection, as well as the other subsections that extend, exclude, or limit coverage of medical payments, applies only if it is first determined that the insured is entitled to receive benefits under the Coverage subsection. The Coverage subsection expressly limits recovery of medical payments to an insured who is injured or killed while occupying plaintiffs' 1983 Saab. Because Christopher was not occupying plaintiffs' Saab at the time of the fatal accident, we find that plaintiffs are precluded from recovering the $10,000 added death benefit under the Saab insurance policy.

Relying on the disposition of the preceding issue, we need not address any of the issues raised by the defendant on appeal.

For the reasons stated, we affirm the order of the trial justice. The plaintiffs' appeal is denied and dismissed, and the papers in the case are remanded to the Superior Court.

LEDERBERG, J., did not participate.