DECISION
This matter comes before the Court on a motion for summary judgment and a motion for entry of final judgment filed by Defendants Spirit Rent-a-Car, Incorporated, alias Car Rental Claims, Incorporated, and Alamo Rent-a-Car, LLC (collectively "Defendants").[1] James C. Lynch, Jr. and Patricia A. Lynch (collectively "Plaintiffs") have filed a timely objection to Defendants' motions. Jurisdiction is pursuant to Rule 56 and Rule 54(b) of the Superior Court Rules of Civil Procedure.
 Facts and Travel
On or about October 2, 2001, Plaintiffs' decedent, Kevin Lynch (the "Decedent"), was operating a motor vehicle on West Shore Road in Warwick, Rhode Island. The vehicle that Decedent was operating was a rental vehicle owned by Defendant Spirit Rent-a-Car ("Spirit") and rented to Decedent by Defendant Alamo Rent-a-Car ("Alamo"). On that same date, place, and time, Defendant Kenneth Germaini was also operating a motor vehicle on West Shore Road. At such time, an automobile accident *Page 2 
occurred in which Decedent traveled off the road and struck a tree. Decedent suffered severe injuries and died shortly thereafter at Rhode Island Hospital. Plaintiffs alleged that the accident was the direct result of the negligence of Kenneth Germaini. In 2003, Plaintiffs settled their claim with Mr. Germaini and his insurance company, Dairyland Insurance Company, for the policy limit of $25,000. A grant of final judgment in favor of Mr. Germaini was entered by this Court on May 30, 2006. This released Mr. Germaini from any further claims related to this lawsuit. There is no allegation of negligence on the part of any of the other named defendants.
Plaintiffs now seek a determination that Decedent's estate is entitled to coverage for his death and injuries by way of uninsured/underinsured motorist coverage provided by one or more of the policies held by the remaining Defendants. At the time of the accident, Decedent had a valid uninsured/underinsured motorist policy on his own motor vehicle, which was issued by Defendant Travelers Insurance Company ("Travelers"). Travelers has asserted that this policy should be considered secondary and that any uninsured/underinsured motorist coverage, which Defendants may have possessed, should be primary. Defendants, at the time of the accident, had two insurance policies in place. The primary policy, which was in effect on October 2, 2001, was issued to Defendants by National Union Fire (the "Policy"). The second policy was an umbrella policy issued by Lexington Insurance Company (the "Umbrella Policy"). The gravamen of Defendants' motion for summary judgment is that no uninsured/underinsured motorist coverage was provided to Decedent by either of these policies. *Page 3 
 Standard of Review
"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law."Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v.The Town Council of East Greenwich et al., 880 A.2d 784, 791 (R.I. 2005) (quoting Lucier v. Impact Recreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)).
Defendants argue that there is no issue of material fact and that as a matter of law there was no uninsured/underinsured motorist coverage provided by the Policy or the Umbrella Policy, to either Decedent or Plaintiffs, on the date of the accident. Defendants contend that they waived uninsured/underinsured motorist coverage pursuant to the requirements of G.L. 1956 § 27-7-2.1. Defendants also assert that Decedent did not purchase any supplementary products, which might have provided Decedent with uninsured/underinsured motorist coverage, at the time he entered into the rental agreement with Alamo (the "Rental Agreement"). In addition, Defendants contend that Plaintiffs' claim against Defendants is separate and distinct from their claims against Travelers and Kenneth Germaini. As such, Defendants seek to have this Court direct an entry of final judgment in their favor.
Plaintiffs conversely maintain that there is an unresolved genuine issue of material fact and thus, this Court must deny Defendants' motion for summary judgment. *Page 4 
Specifically, Plaintiffs dispute whether the provisions of the Rental Agreement, which relate to the declining of additional products, were actually initialed by Decedent. In support of this argument, Plaintiff Patricia A. Lynch, the sister of Decedent, testified by affidavit that the initials written on the Rental Agreement did not appear to be her brother's initials. Additionally, Plaintiffs claim that pursuant to § 27-7-2.1, Decedent was required to have rejected uninsured/underinsured motorist coverage in writing. Plaintiffs aver that Decedent did not do so and because he did not do so, his estate is entitled to receive uninsured/underinsured motorist benefits from Defendants.
 Analysis
The limited issue before this Court is whether Decedent's estate is entitled to claim uninsured/underinsured motorist coverage from Defendants. In order to make a finding on this issue, the Court must turn to the language of the two insurance policies that were held by Defendants at the date of Decedent's accident. This Court must further look to the terms of the Rental Agreement, which Decedent entered into with Alamo.
The determination "of whether a plaintiff is covered by a given insurance policy requires judicial construction of the policy language as a matter of law." Martinelli v. Travelers Ins. Companies,687 A.2d 443, 445 (R.I. 1996). Moreover, it is well-settled that this Court "applies the rules for construction of contracts when interpreting an insurance policy and that [the Court] shall not depart from the literal language of the policy absent a finding that the policy is ambiguous."Mallane v. Holyoke Mut. Ins. Co., 658 A.2d 18, 20 (R.I. 1995). Therefore, "when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. The contract terms must be applied as written and the parties bound by them." Amica Mut.Ins. Co. v. *Page 5 Streicker, 583 A.2d 550, 551 (R.I. 1990). In order for this Court to determine whether a policy is ambiguous, it will "read the policy in its entirety, giving words their plain, ordinary, and usual meaning."Mallane v. Holyoke Mut. Ins. Co., 658 A.2d at 20. It is with these principles in mind that this Court now examines the language of Defendants' insurance policies.
 A. The Policy
The Policy, which was issued by National Union Fire, was the primary insurance policy held by Defendants in 2001. The Policy, which had an initial policy period of June 30, 1997 to June 30, 1998, was in effect at the time of Decedent's accident by way of amendatory endorsements. Defendants claim that pursuant to the terms of the Policy, the named insured reduced the amount of uninsured/underinsured motorist coverage to zero and thus, none was available to Decedent. This Court is in agreement. The following portions of the Policy are germane to this Court's analysis.
The first relevant portion of the Policy is the declarations page. On the declarations page, "Republic Industries, Inc." is listed as the Policy's "Named Insured" under the heading "Item 1."[2] On that same declarations page, under the heading "Item 2", is a section entitled "Schedule of Coverages and Covered Autos." Under Item 2, the limit of "minimum financial responsibility" is selected for liability coverage. Then, on page 44 of the Policy, a form is attached entitled "Rejection of Uninsured/Underinsured Motorists Coverage or Selection of Lower Limit of Liability (Rhode Island)." This *Page 6 
provision, which is signed by Republic Industries, Inc., states that uninsured/underinsured motorist coverage is being reduced to zero pursuant to § 27-7-2.1.
Section 27-7-2.1(a) addresses the amount of minimum uninsured/underinsured motorist coverage that must be offered in Rhode Island. It provides:
 "No policy . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . . The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits. However, the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-31-7, unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists." Section 27-7-2.1(a) (2001)[3]
(emphasis added).
Thus, "§ 27-7-2.1(a) . . . allows a named insured who purchases the minimum coverage for bodily injury liability to decline any uninsured motorist coverage, `but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists.'" Ferreira v. Integon Nat'l Ins.Co., 809 A.2d 1098, 1099 (R.I. 2002) (quoting § 27-7-2.1(a)). It is significant to note that the rejection of uninsured/underinsured motorist coverage included in the Policy did contain the required executed advisory notice.[4] *Page 7 
Plaintiffs do not dispute the applicability of § 27-7-2.1(a). However, Plaintiffs do argue that Decedent, for the purposes of the statute, is the "named insured." Therefore, it is Plaintiffs' position that in order for uninsured/underinsured motorist coverage to have been rejected, Decedent himself would have had to do so in writing. Plaintiffs, in support of their argument, point to Endorsement #9 of the Policy which amends "Section II — Liability Coverage." In this endorsement, it is provided that a "Renter," who rents an automobile covered under the Policy, will be considered an "insured." This Court finds that Plaintiffs' reliance on this limited section of the Policy creates an unnecessary ambiguity. The particular provision relied on by Plaintiffs is limited in scope and specifically relates only to liability coverage in the underlying policy. Whether a renter, under this particular section relating to liability, is a policy insured under the contract is immaterial. Even assuming in arguendo that Decedent's status as an "insured" for purposes of this provision was relevant; this Court finds that Decedent would not actually qualify as an "insured." According to the terms of Endorsement #9, a "Renter" is only considered an "insured" in two types of situations. The first instance is when that renter purchases the Supplemental Liability Insurance Option. While this will be discussed more fully infra, it is undisputed that Decedent did not purchase this option. The second instance in which a renter is considered an insured is when "you [defined as `Named Insured shown in the Declarations'] have contractually agreed to provide limits covered by this Policy." As will be detailed more fully infra, the named insured under the Policy did not contractually agree to provide any uninsured/underinsured motorist coverage to Decedent. Rather, they limited their uninsured/underinsured motorist coverage in Rhode Island to zero. *Page 8 
Rather, to determine who the "named insured" is for purposes of §27-7-2.1 relating to uninsured/underinsured motorist coverage, this Court turns to the declarations page of the Policy. (Emphasis added.) This is the proper inquiry as our Supreme Court has recurrently looked to the declarations page of an insurance policy in order to determine who is the actual named insured. See e.g. Medeiros v. Anthem Cas. Ins.Group, 796 A.2d 1078, 1080 (R.I. 2002); New Hampshire Ins. Co. v.Rouselle, 732 A.2d 111, 114 (R.I. 1999); Martinelli v. Travelers Ins.Companies, 687 A.2d at 445-446. As above-mentioned, the declarations page of the Policy clearly lists "Republic Industries, Inc." as the policy's "Named Insured." That particular section of the Policy is further amended, by Endorsement #1, to include Defendants. Our Supreme Court has held that "[a] court should not, through an effort to seek out ambiguity when there is none, make either party assume a liability not imposed by the policy." Amica Mut. Ins. Co. v. Streicker,583 A.2d at 552 (quoting Bush v. Nationwide Mut. Ins. Co., 448 A.2d 782, 784 (R.I. 1982)). As such, this Court must refrain from "establish[ing] ambiguity by viewing a word in isolation or by taking a phrase out of context."Amica Mut. Ins. Co. v. Streicker, 583 A.2d at 552. Thus, this Court is satisfied that for purposes of § 27-7-2.1, Republic Industries, Inc., along with Defendants, is the named insured.[5]
In this instance, Republic Industries, Inc., the named insured under the Policy, did follow the proper procedures under § 27-7-2.1(a). As required by the statute, the named insured first opted for "minimum financial responsibility" with respect to liability coverage. As stated above, this selection was made under "Item 2" on the declarations *Page 9 
page. Thereafter, on the form entitled "Rejection of Uninsured/Underinsured Motorists Coverage or Selection of Lower Limit of Liability (Rhode Island)," the mandatory advisory notice required by § 27-7-2.1(a) was included. Under the advisory notice, the named insured checked a box which indicated that it was selecting "a limit of zero because of bodily injury or death, and a limit of zero because of injury to or destruction of property of others in any one accident." Thereafter, at the bottom of said form, the following provision was included: "I have read and I understand my options, and I have selected on behalf of myself and for each insured, as marked above." The form was then signed by "Republic Industries, Inc." with the area below the signature reading "Named Insured." Thus, the proper named insured made the rejection in accordance with the procedural requirements of §27-7-2.1(a).
Additionally, because the proper named insured made the rejection, there was no requirement that Decedent himself reject uninsured/underinsured motorist coverage. In construing statutes that require a "name insured" to reject coverage, other jurisdictions have "[i]nterpret[ed] this language literally [and] the courts have held that an insured not named in the policy cannot execute a rejection of the coverage which will be binding upon a named insured who has not assented thereto." William H. Danne, Jr., Construction of Statutory ProvisionGoverning Rejection or Waiver of Uninsured Motorist Coverage, 55 A.L.R.3d 216, 2a (2007). Likewise, an "unnamed insured need not join in or assent to a named insured's rejection in order to be bound thereby."Id. Moreover, our Supreme Court has held that § 27-7-2.1(a) requires a signed rejection of uninsured/underinsured motorist coverage only at the time an insurance policy is initially issued. See Ferreira v. IntegonNat'l Ins. Co., 809 A.2d 1098, 1101 (R.I. 2002). *Page 10 
In light of the above, and based on the clear and unambiguous language of the Policy, this Court finds that any uninsured/underinsured motorist coverage was properly rejected by Defendants. There are no issues of material fact with respect to this issue. Thus, as a matter of law, Plaintiffs are not entitled to claim uninsured/underinsured coverage under the Policy.
 B. The Umbrella Policy
The Umbrella Policy, which was issued by Lexington Insurance Company, had a policy period that extended from July 30, 2001 to October 1, 2002. Thus, it was in place on the date of Decedent's accident. Defendants, in support of their motion, argue that similarly to the Policy there is no uninsured/underinsured motorist coverage offered under the Umbrella Policy. Plaintiffs again dispute this contention and maintain that they are entitled to claim uninsured/underinsured motorist coverage under the Umbrella Policy. This Court applies the above-utilized rules of insurance policy construction to make a determination on this issue.
The Umbrella Policy was purchased by A.N.C. Rental Corporation in June of 2001. The named insured under the Umbrella Policy are listed on the declarations page as A.N.C. Rental Corporation, National Car Rental System, Alamo Rent-A-Car, and Car Temps USA. In support of their contention that no uninsured/underinsured motorist coverage is available under the Umbrella Policy, Defendants produced the affidavit of Mary Morse. Ms. Morse is the Director, Risk Management with Vanguard Car Rental USA Inc., the predecessor to A.N.C. Rental Corporation. Ms. Morse has held that position for three years with Vanguard and for two and one-half years prior with A.N.C. Prior to that Ms. Morse was employed as the Manager of Insurance Programs for A.N.C. *Page 11 
As stated above, A.N.C. Rental Corporation was the purchaser of the Umbrella Policy and is a co-named insured along with Defendant Alamo.
In her affidavit, Ms. Morse testified that under the Umbrella Policy's "Schedule of Underlying Insurance" there is a type of policy coverage listed as "Uninsured/Underinsured Motorists Liability." Ms. Morse explained, and this Court notes, that under this section Lexington Insurance Company lists a "Self-Insured Retention" of $5,000,000. Ms. Morse then testified, by way of affidavit, that Lexington Insurance Company did not issue any policy regarding or reflecting the self-insured retention of $5,000,000. This Court can find no evidence of any language in the Umbrella Policy which would indicate otherwise. In addition, Ms. Morse testified that Coverage A of the Umbrella Policy is a type of "follow form" insurance and, therefore, anything rejected or excluded in the underlying policy, in this instant the Policy, would be excluded from this next layer of insurance. Ms. Morse further explained that Coverage A of the Umbrella Policy would not provide broader coverage than that evidenced by the Policy's schedule of coverage, which was "minimum financial responsibilities." Accordingly, because the Policy provided no uninsured/underinsured motorist coverage to the insureds, the Umbrella Policy, likewise, afforded no such coverage.
Plaintiffs, in support of their objection, have failed to produce evidence tending to show that they are entitled to uninsured/underinsured motorist coverage under the Umbrella Policy. It is well-settled that the opposing party to a motion for summary judgment must not rely upon mere allegations or denials in their pleadings.See Super. R. Civ. P. Rule 56(e). "Rather, by affidavits or otherwise they have an affirmative duty to *Page 12 
set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998). Thus, "[w]hen an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Capital Props. v.State, 749 A.2d 1069, 1080 (R.I. 1999).
Accordingly, viewing the evidence in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have failed to set forth a material issue of fact with respect to the availability of uninsured/underinsured motorist coverage under the Umbrella Policy. This Court finds that no such coverage was available under the Umbrella Policy and thus, Plaintiffs' claim fails as a matter of law.
 C. The Rental Agreement
The final document, which is relevant to the disposition of Defendants' motion for summary judgment is the Rental Agreement.[6]
The Rental Agreement is the contract entered into by Decedent with Alamo, wherein Decedent rented the vehicle which he was driving at the time of the accident. Plaintiffs argue that there exists a genuine issue of material fact as to whether Decedent actually initialed certain provisions of the Rental Agreement. Defendants, however, argue that this issue is immaterial because Decedent was not charged for and did not affirmatively purchase any additional products or coverage. *Page 13 
In construing the Rental Agreement, this Court utilizes the above principles of contract interpretation. Thus, where the terms of the Rental Agreement are clear and unambiguous, this Court will apply them as written. See W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356
(R.I. 1994). In making such determination, this Court "should view the agreement in [its] entirety and give the contractual language its `plain, ordinary and usual meaning.'" A.F. Lusi Constr., Inc. v.Peerless Ins. Co., 847 A.2d 254, 258 (R.I. 2004) (quoting W.P.Associates v. Forcier, Inc., 637 A.2d at 356).
The Rental Agreement entered into by Decedent is a one-page contract with the rental terms and conditions listed on the reverse side. The front of the Rental Agreement contains customer information, information pertaining to the condition of the car, information as to payment, including the imprint of Decedent's credit card, and certain provisions which call for the renter's initials. At the bottom of the Rental Agreement are the signature of Decedent and the signature of the Alamo representative. Plaintiffs agree that the signature at the end of the agreement is in fact Decedent's. Plaintiffs do, however, dispute the authenticity of the initials, which are written beside those certain provisions. Specifically, Plaintiffs dispute that Decedent initialed the following provisions: (1) the provision requiring one day's notice for return of the vehicle; (2) the provision acknowledging that the renter has read the separate Damage Waiver Form;[7] (3) the provision declining physical damage waiver and accepting damage responsibility; (4) the provision declining personal accident insurance and personal effects coverage and (5) the provision declining optional supplemental liability protection. *Page 14 
While Plaintiffs have raised an issue of fact with respect to the initial's authenticity, this issue of fact is not material. As a matter of law, Defendants did not have an insurance policy in place at the time of the accident that would afford Decedent's estate uninsured/underinsured motorist coverage. It is undisputed that Decedent did not purchase any supplemental products from Alamo. In order to purchase any additional products, Decedent would have had to affirmatively initial certain provisions, which sat adjacent to the above provisions relating to the declination of additional products. Specifically, with respect to uninsured/underinsured motorist coverage, Decedent would have had to affirmatively initial the provision requesting Personal Accident Insurance. In addition, adjacent to those provisions respecting the purchase of additional products is the area of the Rental Agreement that relates to payment of the assessed charges. This area includes a separate line for each of the three additional products that a renter has the option of purchasing. It is undisputed that there were no charges entered for these products. The only charge on the Rental Agreement is the one-day flat rate charge of $22.04, which after taxes came to a total of $24.99. Thus, it is clear to this Court that Decedent did not purchase any additional products, including, but not limited to, uninsured/underinsured motorist coverage on the rental vehicle.
Additionally, an examination of the back side of the Rental Agreement further reinforces the actuality that no uninsured/underinsured motorist coverage was made available under the contract. This portion of the Rental Agreement is entitled "Rental Terms and Conditions." The relevant provisions are as follows: *Page 15 
 Waiver and Rejection of Personal Injury Protection Uninsured or Underinsured Motorist Protection.
 "Alamo provides no personal injury protection, uninsured or underinsured motorist protection . . . or other optional coverage pursuant to this Agreement and renter expressly rejects and waives such coverage from Alamo. If notwithstanding the foregoing Alamo is required by law to provide . . . uninsured or underinsured motorist protection . . . Alamo will provide only up to the minimum limits required by the state in which the vehicle is rented and renter . . . expressly waive[s] and reject[s] any coverage in excess of the minimum requirements."
 Responsibility for Bodily Injury and Property Damage.
 "Alamo PROVIDES NO INSURANCE OR COVERAGE TO RENTER, OPERATOR OR OTHER USER OF THE VEHICLE FOR BODILY INJURY OR PROPERTY DAMAGE LIABILITY TO ANY RENTER, OPERATOR, USERS, PASSENGERS OR THIRD PARTIES TO THIS AGREEMENT. I represent that I am currently covered under an automobile insurance policy or qualified self insurance program and that the policy or program provides the renter and any authorized driver with coverage for bodily injury, property damage, uninsured/underinsured motorist protection arising from the operation, use or maintenance of the rental vehicle for at least the minimum financial responsibility limits required under the applicable law for the full term of this Agreement. I agree that my own coverage will be PRIMARY and that Alamo provides no `other valid collectible insurance' or insurance of any type."
In light of the clear and unambiguous language of the Rental Agreement, and the fact that Defendants reduced their uninsured/underinsured motorist coverage to zero, this Court finds that the Rental Agreement provided no uninsured/underinsured motorist coverage to Decedent. Rather, Decedent warranted that he had his own insurance policy and that such policy would be principal. Moreover, Decedent did not purchase any uninsured/underinsured motorist coverage or any other supplemental products in *Page 16 
connection with his rental from Alamo. Hence, as a matter of law, Plaintiffs are not entitled to claim uninsured/underinsured motorist coverage benefits pursuant to the Rental Agreement.
 Conclusion
This Court finds the language of the Policy and Umbrella Policy to be clear and unambiguous and thus, susceptible to only one interpretation. Plaintiffs, pursuant to the terms of these policies, are not entitled to claim uninsured/underinsured motorist coverage from the Defendants. Moreover, Plaintiffs received no additional rights to claim such coverage under the Rental Agreement entered into by Decedent. As such, their claim against Defendants fails as a matter of law.
For the foregoing reasons, Defendants' motion for summary judgment is granted. Additionally, as there is no just reason for delay, this Court also grants Defendants' motion for entry of final judgment pursuant to Rule 54(b). Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] In addition, Plaintiffs have a motion pending entitled "Plaintiff's Motion to Strike the Affidavit of Diana Geremia Dated October 19, 2006." This motion is rendered moot by this Decision and thus, this Court does not address its merits.
[2] "Item 1" was amended by "Endorsement #1", which provided that:
"The Named Insured listed in Item One of the Declarations is amended to read as follows:
1. Alamo Rent-A-Car Inc.;
. . .
3. Spirit Rent-A-Car Inc.;
. . .
6. Republic Industries, Inc., but only with respect to their liability as owner and policy holder."
[3] This section is quoted as it was written on October 2, 2001, the date of Decedent's accident. The current version of § 27-7-2.1(a) is substantively identical to its 2001 counterpart however; it does employ some subtle variations in language.
[4] This issue will be discussed more fully infra.
[5] It is important to note that under Rhode Island law there is no requirement that Defendants also sign the rejection of uninsured/underinsured motorist coverage. Our Supreme Court has specifically held that when a new named insured is added to a pre-existing policy, in which uninsured/underinsured motorist coverage has already been rejected, there is no requirement that a second written rejection be obtained. See Ferreira v. Integon Nat'l Ins. Co.,809 A.2d 1098, 1101 (R.I. 2002).
[6] Throughout this proceeding, Plaintiffs have sought to have Defendants produce the original copy of the Rental Agreement or in the alternate a more legible duplicate. Defendants state that they do not have the original copy and that they have produced that which exists. This Court recognizes that production of the original agreement would be preferable; however, Defendants have satisfactorily explained that they are unable to obtain the original. See R.I. R. Evid. Art. X, Rule 1004.
[7] This notice and the language contained therein is statutorily mandated by G.L. 1956 § 31-34-7. It applies whenever a car rental agency offers a collision damage waiver for an additional cost. *Page 1